at all. Argument not to exceed 15 minutes per side. Ms. Lange, you may proceed for the appellants. This is Danielle Lange and I represent the plaintiff appellants in this matter. In Tennessee, it is a felony under any circumstances to give your fellow citizen an absentee ballot application. That application is a form that provides all the instructions on how to engage in the voter absentee voting process and allows voters to engage in that process. It is also a form that is available as a downloadable PDF on the Secretary of State's website and on any number of election commission websites. And yet if you download that form and provide it to your neighbor or a fellow citizen or like Mr. Lichtenstein to fellow union members, you have committed a felony in the state of Tennessee. This case is about the First Amendment rights of civic engagement groups to engage in basic voter education and voter engagement activity without fear of prosecution. In CTR v. Dieters, this court wrote that the First Amendment is a jealous mistress that demands that sometimes seemingly reasonable measures enacted by governments must bend. In this case, happily, only a patently unreasonable statute must give way. Plaintiffs in this case wish to distribute absentee ballot applications to their community members to effectively inform voters about how to use the absentee voting process and to engage them in that process. So in Meyer, the case that prohibited paying the campaign's initiative circulators, the prohibition on the speech of the circulators. So there was actual speech involved. It strikes me that it's distinguishable from your argument because your argument is that the handing of the application is itself speech. And I'm not certain that the court has ever said that heightened scrutiny applies to pure conduct, even if it's expressive conduct, unless the expressive conduct is kind of viewpoint-based or like the famous Texas v. Johnson. So I don't know that Meyer, which is kind of what you rely on to get exacting scrutiny, helps you all that much because there, they were actually concerned about affecting the true, I don't think. I think you're just solely relying on the conduct. I don't think that's correct, Your Honor. In fact, the allegations in the complaint are quite clear about how the distribution of absentee ballot applications was part and parcel of the interactive voter education and voter engagement activity that they wish to engage in. And so I think in that way, actually, the parallel between Meyer and this case are why the district court's decision is wrong and why the defendants aren't. Why does not, how does not being able to circulate that, so you're, so you're now not saying that the actual physical handing of the application is not the speech you're worried about. You're saying it's the speech to the people to convince them to vote. How does it affect them? They still, there's no ban. They can, they can still speak as much as they want to convince them. Just say, now say, go on the website rather than hand it to them. Two responses, Your Honor. First, that's the exact argument that was made in Meyer. So in Meyer, there's a petition, right? So I think if you'll, you'll give me a moment to paint the analogy. In both the petition circulation context and in this context, the speakers have a goal, right? So one is to get a petition signed. The other is to engage the voter in the absentee voter process. So they have a persuasive goal in speech. Both, in order to achieve that goal, need to use a form that's created by the government. Either a petition that needs to be signed or an absentee ballot application that needs to be signed. And in both cases, it, even with the statutes that were in place, the speakers could go to the voter and say, hey, there's this petition out there that I think is really worth your time and you should go print it out and sign it and send it in. I think you should do that. And in fact, that's exactly the argument that Colorado made in saying that this wasn't protected speech and the Supreme Court rejected that argument. And so that the plaintiffs were allowed to choose their form of communication. So the exact same thing is happening here, where the state of Tennessee... Is it really? So that's what I get confused by. When you say choose the form of communication, the form of communication in Meyer was still going out and speaking, they just couldn't pay for the speech. Is the form of communication here that you want to engage in and handing? And so it relies on the notion that the physical act of handing the application of speech or is it the convincing? So two responses, Your Honor. First, that's not quite true about Meyer. They could certainly pay people to try to impress upon people that they should sign petitions, as long as they weren't the ones collecting them. So in that way, they're exactly analogous. They could totally have paid petition circulators to go out and find voters and say, hey, I think you really should sign this petition. Here's the website where you can do it. And you can pay somebody. And that's exactly what Colorado argued. So in that way, I think the speech is entirely analogous. I will say that it's also the case that although the district court and the defendant argue that the kind of handing out of forms is not speech, I think that's plainly foreclosed by Supreme Court precedent itself. Leafleting, sending out, handing out handbills is quintessential First Amendment activity. Supreme Court has held that repeatedly in cases like McClellan v. Culkley, etc. And the court has said that the dissemination of information is speech. So credit reports have been found to be speech. Information on beer labels has been found to be speech. In a case called Sorrel, the kind of information about prescribing doctors was found to be speech. And so the court has said information is speech. Well, the allegations and the complaint are replete with plaintiffs saying that they want to inform and educate voters. And what better way to inform and educate voters about the absentee voter process than to hand out the form that lays out the official instructions for how to participate. It has all of the rules and kind of eligibility requirements laid out in the official language. If you are seeking to educate voters and disseminate information, which is speech, giving voters this form is the very best way to do that and they're entitled to that. Is that an application with the instructions or is it just the instructions? I'm sorry, Your Honor, I didn't catch the beginning of your question. Is that an application with the instructions or is it just the instructions? This is the application, Your Honor, and the application itself has kind of the instructions built in, right? It says step one, provide this information. Step two, select your ballot. Step three, choose your reason and it has all the statutory language. When the state argues that there's information on the site that you need or that just giving the application could misinform by not providing that information, that's not correct. I don't believe that's correct, Your Honor. I went on their website to print this out last night and it's on a website that says print the application here. Everything that's on the website is on the form? Yes, Your Honor. Although I would add that when you get to that question, I think that goes to the fact that the state interests that are being proposed here are related to expression, right? Are what? Are related to expression. So the state has tried to argue that the O'Brien test should apply here because their interests are not related to expression. But the state interests that are put forward and that quite frankly I think don't line up with the statute are, you know, that this would prevent some sort of voter confusion. That's basically trying to prevent, you know, speakers from communicating with voters because they think that that will be confusing and that's, you know, flies in the face of basic First Amendment law. Here's what I don't understand from what you've said so far. The examples that you were giving were the pieces of paper that were considered to be speech all had a message on the pieces of paper. That's how that speech was being communicated, by handing something out. So here I thought your message was it's important to vote and one way to do it is to vote absentee. But it doesn't seem to me that that message is what's on this piece of paper the state has. Granted it tells you how to do it, but that doesn't seem to be the message that you're saying is protected here. I think plaintiffs have two messages. One is the one that you've named here and that's where I think the analogy to voter registration activity which has been repeatedly held to be expressive conduct and to petition signatures is valuable because the court has said that it's about the kind of intertwining of the kind of conduct with getting out a form and the speech. So that's why, for example, charitable solicitation gets such heightened scrutiny. Because even though you could regulate the kind of asking for money, the court in that case said that it's about the inter-characteristic intertwining. Do you think the over-breath of the statute I find concerning but not necessarily in a much, I mean, I worry about all the people who don't know about this law. And so all those people who like, you know, randomly print out the thing and then give it to their spouse, they may have committed a crime. That seems problematic. But what if they weren't doing it for any free speech reason? Would you say that that's expressive so your argument would apply to people who just print it out at the request of somebody? I find the over-breath alarming as well. Our clients have brought First Amendment arguments, but I think, so we don't have a plaintiff, for example, that brings the specific claim. The most concerning part of the statute, it seems to me, has nothing to do with the First Amendment. It has everything to do with just people who have no idea that there's this Tennessee statute that apparently prohibits you from printing out something and giving it to a friend. Yeah, I find that very alarming as well. I think that the First Amendment implications of chilling speech, though, when you get into a world where the state of Tennessee has so strictly regulated voter education and engagement that merely printing out a form and giving it to your fellow citizens is a felony, I think you're going to run into serious chilling problems. I think you could make due process arguments as a defense. Okay, so maybe it would be voting rights or something, but that wouldn't implicate, would you concede that that would not implicate the First Amendment if it was? It would seem to me that it would depend a great deal on the context, right? If your husband was like, I don't know if I want to, it would depend a great deal on the context. Yeah, but if you're not doing it for any persuasive reason, it's just purely, can you please print this out for me? Sure, I'll print it out and here you go. Oh no, I just committed a crime. That is not really asked of First Amendment, but it has nothing to do with the First Amendment. That particular instance, I would say, is outside of the scope of the First Amendment claim, but is kind of very closely related with the over-breath First Amendment claims. I know my time has expired. I just wanted to answer Judge McKeague's second part of the question, which is that the second part of the message is about education. And that's where I think the form itself actually does speak directly. Education is how to do it. How to do it. And that's a huge part of Get Out the Vote work, is helping voters understand the process. Absentee voting is a complicated process. And if you look back at the complaint, there are two clear messages that are alleged. One is about engagement and persuasion. The other is about equipping voters with the information. They're not limited in what they can say about how to do it. You go online, it's going to have three questions. Here's how you fill it out. They can do all that, right? Right, but this is exactly... You just can't hand the piece of paper. This is what Meyer said you can't do, which is the slicing and dicing of First Amendment activity and choosing alternative methods of communication. Just because there's one method that the petition circulators could have used, which would be go print out the petition yourself, that doesn't mean that petition circulation where you collect the signatures is not covered. Thank you very much, Your Honors. You'll have your time in rebuttal. May it please the Court, Clark Kilbrand of the Tennessee Attorney General's Office for defendants' appellees, first to address some of the issues that came up in questioning. Going to the overbreath, again, that is not any part of the complaint the plaintiffs have brought here, but the warning itself is on the form. So anyone who downloads the form would see that warning that you're not allowed under Tennessee law to distribute that form to others. Why does Tennessee, just as a... We have to get into policy under Anderson verdict or other types of tests. What's the... I know this law dates back a while, so maybe it was pre-internet age. What's the continued justification for it when the absentee ballot application is so widely available? This law dates back to 1994, as Your Honor noted. It's been around a while, but there are still important state interests that are there for making sure that the voter has a direct interaction with the county election commission or the state election commission. One of the reasons is that if there are any questions that the voter may have, the election commission is able to answer those. For example, on the website that opposing counsel mentioned, there's an FAQ section there where if there are any questions that the voter may have, they're able to get the official answers for any questions they have about filling out the absentee ballot application or going through the absentee ballot process. The state wants to make sure that there remains a direct connection between the potential voter and the election commission. Does that mean that... Does the state interpret the statute to cover my over-breath hypotheticals of just a friend printing it out at a request of another friend just randomly or a spouse like in the home? Hey, can you print out the absentee ballot application for me? Sure. Yes, here you go. Who's committed a felony? Yes, Your Honor. The law requires the voter, him or herself, to go and actually download the form for themselves. There could be a family computer, but that individual would need to go to that computer, download the form from the website, or go to the election commission to obtain the form there as well. Also under Tennessee law, though, someone is able to request an absentee ballot simply by writing out a letter if they have all the required information that's on there and sending that in, and then once they do so, then we'll send that back to them. If somebody's helping their 90-year-old grandmother who says, I want one of those absentee ballots or I want an application, what's the state's interest in that? Even under the current law, individuals are able to assist others in filling out absentee ballots. At that point, it's just, I could be sitting with my grandmother, I fill out the form for her, I go to the printer and I hand it to her, and I've committed a felony. So to complete the absentee ballot application requires a printed signature, so what would need to click to download the form itself, to click on that and then just click print, fill out the form, the relative could be sitting right there and assist in doing so. If someone has difficulty signing his or her name, then there's a spot on the absentee ballot application where the individual assistant can note that assistance was provided there. So the law still allows all sorts of methods to assist or to educate others and to tell them this is how you obtain. So I print out a blank application, go to the printer and hand it to her, and that's a felony, right? To make sure I understand your hypothetical, the voter who would be requesting the absentee ballot would need to print out the absentee ballot application for themselves. That's what the law requires, and that makes sure that there's a direct connection, and again, that's not within the scope of the complaint that was brought. This is a single First Amendment claim for expression, and with that, the association's expression as well that was brought. What's the status of absentee voting in Tennessee? In Ohio, it's available for everybody. I'm curious, is Tennessee still a four cause state, or is it generally available without cause and anybody can vote absentee? No, we don't have general mail-in voting. The individual needs to have a reason for why he's voting absentee. There are a variety of reasons for doing so, such as if the individual will be out of the county for the entirety of early voting election, if the individual is, say, a student somewhere else in the state or outside of the state. There are various reasons. Are those reasons on the website? Is that one of the justifications so that you actually have to go to make clear that you can only vote in certain circumstances? Those reasons are both on the website with additional explanation for those. For example, one of those reasons is if the individual has COVID or is symptomatic for that, and it provides further information. It says here you can go to the CDC's website. It provides a link on the website for where you can go there. Are they also on the form? Yes, Your Honor, I was going to get to that. They're also on the form itself as well. If they're on the form, doesn't that reduce your argument? Whether you go on the website and you see the restrictions or you're handed a piece of paper and you see the restrictions, you're still going to be educated about the restrictions. The website has additional information about those reasons as well, so there's still... They go beyond what's on the form? They go beyond what's on the form, so there's still... Can you give an example? The CDC example, I'd have to go back and look at the form, but I believe that one is just on the website itself and there's more explanation provided for an individual with COVID symptoms there. With what? With COVID symptoms. So if someone has COVID, then they are able to vote absentee. We have not required them to go in person and vote, and that's one of the reasons why under the general allowance for individuals with medical conditions that they don't have to go and vote in person. So it's very... You're saying that it's still very restricted in Tennessee? State of Tennessee believes it's reasonably restricted because there's a lot of possibility both for fraud or for bad actors to engage in the absentee ballot process. In Tennessee, we've been able to avoid a lot of those concerns, which have enabled Tennessee to protect its elections and to ensure the integrity of those elections, which as this court and the U.S. state interest. Tennessee's had this law on the books for several decades and it still achieves that interest itself. So what analysis do you say applies? What framework? So addressing whether or not it's expressive itself, we look to Johnson to see whether or not it's expressive. Here, it's not inherently expressive. This is a state-created form. Unlike the ballot initiative example, this is not a private individual's speech. This is the state's form itself. But isn't handing somebody a form expressive in the sense that, go apply. If this applies to you, go apply for one. No, as the district court here noted and the Eastern District of Michigan has also ruled recently, just simply handing someone a form can mean anything from, just throw this away to this is from a certain case that's going on in the court. It doesn't necessarily mean the additional... I mean, just that argument, I don't find particularly persuasive. I mean, you don't give somebody something to throw away. Well, plaintiffs also did not allege in their complaint that a voter would likely understand that message to be there simply from the act of handing it over. And just as this court ruled in Daunt, when the district court denies a preliminary injunction, it's incumbent on the plaintiffs to go back and think about whether or not they need to replete in their complaint any additional facts and allege anything in there. And here, plaintiffs failed to do that to provide that allegation in their complaint. I find the Supreme Court case law on what is inherently expressive somewhat ambiguous because I have trouble... So Rumsfeld says you can't look at the speech surrounding the conduct to say that the conduct is expressive. You have to look at the expression alone. But even in Texas v. Johnson, the court said you could look at the context and burning a flag doesn't necessarily say anything. You can make the same hypothetical as, well, I'm burning the flag because I want to respectfully get rid of it and this is the way I think it's written, and you're not conveying the anti-war message, which was at issue in Texas v. Johnson. Texas v. Johnson did say you could look at the context, and the context was a protest outside the Republican National Convention. So here, wouldn't the context be get out the vote drives? And in the context of a get out the vote drive, isn't it kind of obvious that when you're handing somebody an absentee ballot that you're expressing a get out the vote message? So first addressing Texas v. Johnson, there, burning the American flag in a disrespectful manner is inherently a protest that anyone would acknowledge. Isn't it only because of the context in which the flag was being burnt? I mean, there's other, you're just, you know, I've got a lot of trash that I want to burn and this flag is all torn up so this is the way I want to get rid of it. That doesn't necessarily express anything. I think in the manner in which it was done, the burning the flag, it's clearly, and that's why there's some ambiguity, as Your Honor noted, on the Supreme Court's precedent, but really it only gets to clear symbols like the American flag where the court's been willing to say that just generally, just conduct itself is inherently expressive. And then to get to the rally example or the education example, it's really the surrounding speech that is itself the private individual's speech. The encouragement, the attached letters, that really is the speech and that's how the Northern District of Georgia recently ruled as well, is that even if you're including this as part of a general package to send to encourage someone to vote, it's the surrounding letter, the surrounding speech that really is the private individual's speech. Here the state-created form is not the private individual's speech in and of itself there. This is not core political speech and other courts have addressed things like collecting voter registration forms, have consistently ruled that Meyer doesn't apply to those. Those are not themselves core political speech and two examples of that would be Steen and then Feldman from the Ninth Circuit as well. Isn't it content-based in the sense that I can stand on the corner with all of these absentee ballot applications and burn them and just, you know, I am burning absentee ballot applications. I don't believe in absentee voting and I can do that but I can't give it to someone in the context of absentee voting is a good thing. It increases citizen participation in government. Distribution is not speech, so we're not looking at whether or not there's content of the speech any more than distributing marijuana on the court or outside the courthouse would be considered speech. We wouldn't look to whether or not the individual is smoking the marijuana or distributing it to say that one is protected under the First Amendment and the other is not. In any instance, federal and state law could still prohibit either distributing or smoking the marijuana outside of the courthouse. Is burning absentee ballots speech? I don't think that that is speech and you could look at, so burning absentee ballots themselves or the application, I don't think that that would be considered speech and you Even if it were speech, it's the sort of generally applicable law that applies to any distribution there. It's not specifically targeted certain types of speech or anything like that. So even if it were speech under the O'Brien test, this is the sort of generally applicable law that would still be constitutional under the First Amendment. But how is it generally applicable if it's just... Because it applies to any distribution. It doesn't matter why the individual is distributing the absentee ballot application. Any individual who doesn't work for an election commission who distributes an absentee ballot application is violating the law. That's a clear, just it's generally applicable. There's not any restriction that just applies to absentee ballot drives or anything like that. This applies to the hypotheticals we discussed earlier about someone at their home passing it off to a relative just as much as it applies to someone passing it off to a fellow union member or to someone on the street. Okay, I have another question. I understand that in this context, the state gets a lot of deference in this field and how to regulate elections and that it doesn't have to establish its interest in every case. Does the plaintiff get a chance to disprove all of the proffered interests that they have no relation to this prohibition? So... Because this is on the pleadings, right? On the pleadings, yes, your honor. I would encourage this court to look to Daunt and there at 311, this court said that we weigh the burden against the state's asserted interest. So we see what the state asserted the interest to be and clearly just looking at the face of the law, those interests are advanced by this law and the interest in protecting the integrity of elections and preventing voter confusion are important interests that this court and others have respected. Does the plaintiff have any opportunity to show that although those are generally permissible interests, there's no relation between the prohibition and those interests? That it's basically illusory in reality? Even if they did, I don't think there would be... This is clearly the interest that the state is trying to advance. The district court was even able to think of additional state interests that would justify it. So looking at this longstanding law, there would clearly be interests that are advanced. Under Daunt, I don't think there was any additional ability to show that this is just illusory and plaintiffs haven't tried to plead anything showing, going back to 1994, that the state really was engaged in some sort of fraudulent scheme just to try to justify restrictions under false means. So plaintiffs didn't plead anything to suggest that these are really illusory state interests. So given that plaintiffs decided not to do so, we'd encourage this court to affirm the decision of the district court. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you.  Thank you. Thank you. Thank you. A handful of responses, your honors. First, I just wanted to clarify that the specific COVID excuse that was mentioned as being only on the website is on the form. And it was my understanding that Tennessee did update its form to make sure that all of that information would be on the form itself. Since we didn't talk about it in my affirmative case and it came up in defendant's case, I do want to talk about whether or not there's any continued justification here and what our continued justification for this law here and our right at the motion to dismiss stage to have our allegations recognized and taken as true and then be able to prove them. And we did allege that there is no rational basis for this law. Our allegations on that are quite clear and should be taken as true at this stage. Don't you think rational basis is a legal conclusion? If it was under the rational basis test, I would see no problem deciding this on the motion to dismiss because we come up with the rational basis. That's the way the test works and it can be broadly over and under inclusive. Fair enough. It's a little less clear to me like under the O'Brien test how the motion to dismiss context should affect things. But we have, I would say O'Brien's test and Anderson verdict are somewhat similar. And we have repeatedly said in the Anderson verdict context that we can affirm dismissals at the motion to dismiss stage. So like Daunt was the example. How would you respond to that argument? I have a couple of responses, Your Honor. First, I mentioned rational basis as kind of what our allegations prove because the defendant suggested we did not make those allegations. But I agree that the question here is not about rational basis and that it's key that there be some bite, whether it's Anderson verdict or O'Brien or as we assert it really should just be the Meyer exacting scrutiny test. But there has to be some bite there. And at that point we are entitled to prove that these interests that have been put forward are entirely illusory. An important thing to understand about the kind of statutory context of when this law was originally passed I think sometime in the 70s and then kind of somewhat updated in 1994 is at the time absentee ballot applications were numbered and in complete control of the election commission. They were keeping track of every single piece of paper that was an absentee ballot application by number. And in fact if you spoiled one you had to give it back to the election commission so that they could save the spoiled absentee ballot application and give you a new one. So the kind of proffered justifications here are completely post hoc. The actual justification at the time was that they wanted to keep kind of tight control over the actual applications themselves and know how many of them there were. In a world where they're available on the website and you can print a thousand copies for yourself and you can spoil as many as you'd like that's just a relic and it makes no sense in the current context. And you know with respect to the O'Brien analysis O'Brien only applies if the proffered justifications are unrelated to expression. But here what you'll hear are the proffered explanations are twofold. One has to do with voter confusion and the second has to do with potential fraud. And there was a similar case in Texas v. Johnson where one argument was about kind of disruptions of the peace and one was about disrespect for the flag. And the court said in that case that those two justifications didn't move things into the O'Brien context because disruption of the peace just wasn't relevant on the record. And so similar here the integrity of elections is not relevant on this record. There's no evidence whatsoever that somehow allowing people to hand out blank forms that are available on the internet encourages fraud. None whatsoever. So then we get to voter confusion. But really that's just nothing more than wanting to control the communications about absentee voting and keep it between the state and the voter. That's what the state says. But in fact civic engagement groups have a right to say hey some voters don't really want to engage with the state and I want to help you understand this process. I want to explain it to you. And the idea that the state thinks that that will be confusing to voters is precisely the type of restriction and monopolizing of voter communications that's not permissible. In my final remaining moments I do want to mention that the associational claim was not addressed at all by the district court and is a distinct claim. The engagement of voters is a manner of association with those voters. It's also the way in which the NAACP and other groups come together as members to engage in membership activity. And that claim was entirely ignored by the district court and is alone a reason to remand. Thank you counsel. Thank you very much your honor. The case is submitted. We thank you for your presentation today. Case number 22-5028 Jeffrey Leckenstein versus Trey Haggard et al. Argument not to exceed 15 minutes per side. Ms. Lang you may proceed for the appellants.